**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**December 16, 2013**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

DEREK RYAN SCHELL,

      Plaintiff-Appellant,

v.

EDWARD L. EVANS, Interim
Director, Oklahoma Department of
Corrections;* SHARON MCCOY;
STEVE YOUNG; CHIEF LOGAN;
MARVIN VAUGHN; LINDA EIKE,

      Defendants-Appellees.

No. 12-6267
(D.C. No. 5:12-CV-00866-M)
(W.D. Okla.)

---

**ORDER AND JUDGMENT****

---

Before **KELLY**, **HOLMES**, and **MATHESON**, Circuit Judges.

---

       *      Pursuant to Federal Rule of Appellate Procedure 43(c)(2), Edward L.
Evans, the current Interim Director of the Oklahoma Department of Corrections,
is automatically substituted for Justin Jones as a Defendant in this case.

       **     After examining the briefs and appellate record, this panel has
decided unanimously that oral argument would not materially assist the
determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G).
The case is therefore ordered submitted without oral argument.

       This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. It may be cited,
however, for its persuasive value consistent with Federal Rule of Appellate
Procedure 32.1 and Tenth Circuit Rule 32.1.

Plaintiff-Appellant Derek Ryan Schell, an Oklahoma state prisoner proceeding pro se,[1] appeals from the district court's dismissal of his claims brought pursuant to 42 U.S.C. § 1983 against the Director of the Oklahoma Department of Corrections ("ODOC") and numerous other ODOC employees (collectively, "Defendants"). In connection with his appeal, Mr. Schell has filed a self-styled "motion in limine," which we address in this order and judgment. Mr. Schell also seeks leave to proceed *in forma pauperis* ("IFP"). For the reasons discussed below, we **affirm** the district court's dismissal of Mr. Schell's § 1983 complaint, **deny** his motion in limine, and **deny** him IFP status.

## I

On April 26, 2010, Mr. Schell entered a no-contest plea to pointing a firearm at a person, in violation of Okla. Stat. tit. 21, § 1289.16. He was sentenced to a term of ten years' imprisonment in the ODOC. Despite his request to the contrary, he was assigned to the John Lilley Correctional Center ("JLCC") in March 2011. Mr. Schell contends that Defendants deliberately sent him there "in hopes that a gladiator fight would arise" between him and a JLCC inmate with whom he evidently did not get along—and that in July 2011, to conceal this "wrongful transfer," Defendants moved him to the Frederick Community Work Center ("FCWC"). R. at 8–9 (Compl., filed Aug. 10, 2012).

---

[1] As we further explicate below, we afford Mr. Schell's pro se filings a liberal construction. *See Garza v. Davis*, 596 F.3d 1198, 1201 n.2 (10th Cir. 2010); *Yang v. Archuleta*, 525 F.3d 925, 927 n.1 (10th Cir. 2008).

Mr. Schell also maintains that one of the Defendants blocked his access to the FCWC's law library, thereby preventing him from making timely post-conviction filings and "causing [his] case to be dismissed." *Id.* at 6. According to Mr. Schell, he committed an infraction in order to effect a transfer to a higher-security facility—the William S. Key Correctional Center ("WSKCC")—where he thought he would be able to access a law library and file for state post-conviction relief. Mr. Schell alleges that his request was denied and that he subsequently petitioned for federal habeas relief in the Eastern District of Oklahoma. But, according to Mr. Schell, Defendants again sabotaged his case by withholding his petition from the mail.

On August 10, 2012, Mr. Schell filed a § 1983 lawsuit in the Western District of Oklahoma, alleging violations of his Fifth, Eighth, and Fourteenth Amendment rights.[2] He requested dismissal of his criminal case, an order directing the ODOC not to commit any "recourse or retaliation" against him, and a transfer to a facility "close to home." *Id.* at 11. The district court—adopting the preliminary-screening recommendation of the magistrate judge (over Mr. Schell's objection)—dismissed the complaint in accordance with 28 U.S.C.

---

[2] Days before filing his § 1983 lawsuit, Mr. Schell also sought habeas relief in the Western District of Oklahoma. His habeas petition is the subject of a separate, factually related order in Appeal No. 12-6271, in which we deny Mr. Schell a certificate of appealability and dismiss that matter.

§ 1915A. After Mr. Schell filed his notice of appeal on October 18, 2012, the district court denied his two motions for leave to proceed IFP.

## II

We first address Mr. Schell's argument that the district court erred in dismissing his § 1983 complaint. We then turn to his self-styled "motion in limine," wherein he requests a transfer to a different facility, and then to his request to proceed IFP.

## A

Dismissal of a complaint pursuant to 28 U.S.C. § 1915A is a legal question we review de novo. *See Young v. Davis*, 554 F.3d 1254, 1256 (10th Cir. 2009). As we must when assessing any dismissal for failure to state an actionable claim, we "accept as true all well-pleaded facts, as distinguished from conclusory allegations, and view those facts in the light most favorable to the nonmoving party." *Moya v. Schollenbarger*, 465 F.3d 444, 455 (10th Cir. 2006) (internal quotation marks omitted).

To avoid dismissal, a plaintiff must allege facts sufficient to make his claims facially plausible. *See Kerber v. Qwest Grp. Life Ins. Plan*, 647 F.3d 950, 959 (10th Cir. 2011). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Context is particularly critical to this determination with respect to

prisoner litigation. *See Gee v. Pacheco*, 627 F.3d 1178, 1185 (10th Cir. 2010) ("[A] prisoner claim will often not be plausible unless it recites facts that might well be unnecessary in other contexts."). Indeed, prisoners' constitutional rights "must be exercised with due regard for the 'inordinately difficult undertaking' that is modern prison administration." *Thornburgh v. Abbott*, 490 U.S. 401, 407 (1989) (quoting *Turner v. Safley*, 482 U.S. 78, 85 (1987)).

**B**

Mr. Schell asserted three claims for relief against Defendants in his § 1983 complaint: (1) "[i]ndifference toward the plaintiff," in violation of his Eighth and Fourteenth Amendment rights (Count I); (2) denial of access to a law library, in violation of his Fifth Amendment due-process rights (Count II); and (3) frustration of his efforts to defend and maintain his habeas action in the Eastern District of Oklahoma, purportedly in violation of his general constitutional rights (Count III). R. at 8–10.

**1**

Mindful of the Supreme Court's directive in *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (per curiam), we hold a pro se plaintiff's pleadings "to a less stringent standard than formal pleadings drafted by lawyers." *Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005) (internal quotation marks omitted). We have understood the *Haines* rule to mean "that if the court can reasonably read the pleadings to state a valid claim on which the plaintiff

could prevail, it should do so."  *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).  In addition, we afford pro se litigants reasonable opportunities to cure any defects in their pleadings.  *See id.* at 1110 n.3; *Reynoldson v. Shillinger*, 907 F.2d 124, 126 (10th Cir. 1990).  At the same time, "the court should not assume the role of advocate, and should dismiss claims which are supported only by vague and conclusory allegations."  *Ledbetter v. City of Topeka*, 318 F.3d 1183, 1188 (10th Cir. 2003) (internal quotation marks omitted); *see also Hall*, 935 F.2d at 1110 ("[T]he court need accept as true *only* the plaintiff's well-pleaded factual contentions . . . ." (emphasis added)).  The onus does not fall upon the court to supply additional facts or legal theories to benefit pro se plaintiffs.  *See Smith v. United States*, 561 F.3d 1090, 1096 (10th Cir. 2009); *Whitney v. New Mexico*, 113 F.3d 1170, 1173–74 (10th Cir. 1997).

A plaintiff bringing a § 1983 claim must "allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law."  *Bruner v. Baker*, 506 F.3d 1021, 1025–26 (10th Cir. 2007) (internal quotation marks omitted).  Where, as here, the plaintiff names several individuals as defendants, "the complaint [must] make clear exactly *who* is alleged to have done *what* to *whom*, to provide each individual with fair notice as to the basis of the claims against him or her."  *Robbins v. Okla. ex rel. Dep't of Human Servs.*, 519 F.3d 1242, 1250 (10th Cir. 2008).  The complaint must also demonstrate personal

involvement on the part of each individual. *See Grimsley v. MacKay*, 93 F.3d 676, 680 (10th Cir. 1996). Additionally, the plaintiff must allege a causal connection—*viz.*, that the defendants "set in motion a series of events that caused the constitutional violation." *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 779 (10th Cir. 2013).

**2**

Even a generous reading of Mr. Schell's complaint indicates that Count I, wherein he alleges violations of the Eighth and Fourteenth Amendments, fails to state a viable § 1983 claim. To be sure, there is no bright-line test "by which courts determine whether conditions of confinement are cruel and unusual" for Eighth Amendment purposes. *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981). Nonetheless, Count I does not describe a "deprivation[] denying the minimal civilized measure of life's necessities," thereby offending the Eighth Amendment. *Craig v. Eberly*, 164 F.3d 490, 495 (10th Cir. 1998) (internal quotation marks omitted).

The essence of Mr. Schell's position is that Defendants were "indifferent" to his housing preferences—not that they acted with "*deliberate* indifference," as the Supreme Court has defined that term. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994) (emphasis added). Indeed, his specific allegations merely show that he wanted to be separated from another inmate; yet, Mr. Schell concedes that Defendants placed the other inmate in protective custody *the entire time* both men

resided at the JLCC. This admission suggests that Defendants were actually responsive to Mr. Schell's needs, and it plainly defeats his Eighth Amendment claim. *See Barney v. Pulsipher*, 143 F.3d 1299, 1310 (10th Cir. 1998) (noting that a prison official may be liable for an Eighth Amendment violation "only if the official knows of *and disregards* an excessive risk" to the inmate (emphasis added) (internal quotation marks omitted)).

Moreover, to the extent that Count I asserts a violation of Mr. Schell's Fourteenth Amendment rights, it is equally infirm. As a matter of law, Mr. Schell has no protected liberty interest in being incarcerated in a facility of his choosing, *see Meachum v. Fano*, 427 U.S. 215, 228–29 (1976); *Gee*, 627 F.3d at 1193, or in any other discretionary housing classifications by prison officials, *see Cardoso v. Calbone*, 490 F.3d 1194, 1197–98 (10th Cir. 2007). Indeed, he has no liberty interest in his conditions of confinement, unless he alleges facts showing that the conditions "impose[] atypical and significant hardship on [him] in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995); *accord Estate of DiMarco v. Wyo. Dep't of Corr.*, 473 F.3d 1334, 1339 (10th Cir. 2007). Mr. Schell patently has made no such showing. We therefore conclude that the district court properly dismissed his complaint regarding the Eighth and Fourteenth Amendments.

**3**

Insofar as Mr. Schell's second claim for relief alleges a Fifth Amendment violation, it is likewise unavailing. Mr. Schell contends in Count II that Defendants violated his Fifth Amendment rights by blocking his access to a law library (and, in effect, the courts)—which, he asserts, resulted from his transfer to the FCWC. Throughout this lawsuit, he has claimed that Defendants caused him to miss the filing deadline for his habeas petition in the Eastern District of Oklahoma.

Mr. Schell's Fifth Amendment claim is predicated on allegations that Defendants unlawfully denied his "numerous . . . [requests] to use a legal library system" during his stint at the FCWC. R. at 7. The problem for Mr. Schell is that the procedural history of his case undercuts his claim for relief. Specifically, Mr. Schell was transferred to the FCWC on July 20, 2011—almost two months after the limitations period for Mr. Schell to file his habeas petition expired.

Mr. Schell entered his plea and was sentenced on April 26, 2010. His judgment and sentence became final on May 6, 2010, when the time for withdrawing a guilty plea expired without Mr. Schell taking any action to do so. *See* Rule 4.2(A), *Rules of the Oklahoma Court of Criminal Appeals*, Okla. Stat. tit. 22, ch. 18, app. (2010) (allowing a defendant ten days to move to withdraw his plea after the entry of judgment and sentence). Absent any indication of tolling (and there is none), the limitations period for Mr. Schell to file his habeas petition

expired one year later—on May 9, 2011.[3]  *See* 28 U.S.C. § 2244(d)(1).  In an analysis that reflected these operative dates, the district court ultimately dismissed Mr. Schell's habeas petition in the Eastern District of Oklahoma as time-barred.  *See Schell v. Vaughn*, Dist. Ct. No. 6:12-cv-00203-JHP-KEW, Doc. 23, at 2 (Op. & Order, filed July 11, 2012).

Thus, Mr. Schell's claim that Defendants' unconstitutional conduct at the FCWC caused him to miss his habeas filing deadline is fatally undercut by the fact that this deadline had already expired when Mr. Schell arrived at the FCWC. At no point in the instant lawsuit has he argued that he lacked access to the courts when he was still situated to pursue federal habeas relief—i.e., between March 23, 2011, and May 9, 2011, when he resided at the JLCC.  Stated otherwise, at the time of Defendants' alleged malfeasance, Mr. Schell *suffered no legally cognizable injury*.  Because § 1983 requires him to demonstrate an injury that is causally linked to his conditions of confinement, this is fatal to his claim.  *See Tafoya v. Salazar*, 516 F.3d 912, 922 (10th Cir. 2008); *Grimsley*, 93 F.3d at 679; *see also Lewis v. Casey*, 518 U.S. 343, 349 (1996) (underscoring the importance of alleging an "actual injury").

---

[3]      The one-year period actually expired on May 7, 2011, which fell on a Saturday.  Accordingly, pursuant to the federal rules, Mr. Schell's official filing deadline was the following Monday, May 9, 2011.  *See* Fed. R. App. P. 4(a)(1); Fed. R. Civ. P. 6(a)(1)(C).

Given Mr. Schell's failure to state a cognizable Fifth Amendment violation, we conclude that the district court correctly dismissed Count II of his § 1983 complaint.

**4**

Mr. Schell's theory of relief in Count III is that Defendants frustrated his efforts to defend and maintain his habeas petition in the Eastern District of Oklahoma. More specifically, Mr. Schell alleges that he had a deadline to respond to counsel for the State of Oklahoma and that, through the WSKCC librarian, Defendants "knew of the deadline . . . and withheld the mail sent on June 25th, 2012 [until] July 09th, 2012." R. at 9–10. For similar reasons to those that we advanced as to Count II, this claim is untenable because of timing. Quite simply, even if some Defendants frustrated his efforts to defend and maintain his habeas action around June and July 2012, Mr. Schell could not have suffered a cognizable, constitutional injury from such conduct because the limitations period for Mr. Schell to file his habeas petition unquestionably had expired long before the misconduct of which he complains (i.e., in May 2011). Therefore, we conclude that the district court's dismissal of Count III for failure to state a claim was also proper.

**C**

During the pendency of this appeal, Mr. Schell also filed a self-styled "motion in limine" seeking physical protection and different housing. Arguing

-11-

that Defendants have acted with deliberate indifference to his medical needs after an alleged gang fight, he requests our assistance in effecting his transfer to a "halfway house in Tulsa." Mot. at 3 (10th Cir., filed Jan. 17, 2013). This motion has no discernible merit.

From a procedural perspective, Mr. Schell does not explain why his request is proper in the context of this appeal from the district court's § 1983 judgment. Indeed, he does not seek "in limine" relief at all, as that language is customarily understood. *See Black's Law Dictionary* 1109 (9th ed. 2009) (defining "motion in limine" as "[a] pretrial request that certain inadmissible evidence not be referred to or offered at trial"). Even were we to construe Mr. Schell's filing as a request for a writ of mandamus (an arguably viable procedural mechanism, in light of the relief that he seeks), the writ could not issue under these circumstances due to the absence of a clear duty by the district court to provide the relief that he desires. *See, e.g.*, *Hadley Mem'l Hosp., Inc. v. Schweiker*, 689 F.2d 905, 912 (10th Cir. 1982) (noting that "[f]or mandamus to issue there must be," among other things, "a plainly defined and preemptory duty on the part of the defendant to do the action in question"); *see also In re Motor Fuel Temperature Sales Practices Litig.*, 641 F.3d 470, 487 (10th Cir. 2011) (requiring litigant to demonstrate "more than what we would typically consider to be an abuse of discretion" (internal quotation marks omitted)); *In re Cooper Tire & Rubber Co.*, 568 F.3d 1180, 1187 (10th Cir. 2009) ("It is not appropriate to issue a writ when the most that could be

-12-

claimed is that the district courts have erred in ruling on matters within their jurisdiction." (internal quotation marks omitted)).

Furthermore, substantively speaking, Mr. Schell's motion is riddled with unsupported allegations concerning Defendants that do not implicate the Constitution. While we understand him to be challenging some conditions of his confinement, the fact remains that he has not shown "that he is incarcerated under conditions posing a substantial risk of serious harm." *DeSpain v. Uphoff*, 264 F.3d 965, 971 (10th Cir. 2001) (quoting *Farmer*, 511 U.S. at 834) (internal quotation marks omitted). We note again that Mr. Schell has no protected liberty interest in being housed in his preferred correctional facility. *See Overturf v. Massie*, 385 F.3d 1276, 1279 (10th Cir. 2004). Transfer may be a remedy in extraordinary circumstances, but it is certainly not a *right*. *See Blackmon v. Sutton*, 734 F.3d 1237, 1246 (10th Cir. 2013) (noting that the Supreme Court's key Eighth Amendment cases do not "recognize[] anything like a right to transfer *simpliciter*"). In sum, Mr. Schell's "motion in limine" is wholly without foundation and must be denied.

### D

Mr. Schell seeks leave to proceed IFP on appeal. To qualify for IFP status, he must demonstrate "the existence of a reasoned, nonfrivolous argument on the law and facts in support of the issues raised on appeal." *Watkins v. Leyba*, 543 F.3d 624, 627 (10th Cir. 2008) (internal quotation marks omitted). This, Mr.

-13-

Schell has not done. We order Mr. Schell to make immediate payment on the unpaid balance due.

## III

For the foregoing reasons, we **affirm** the district court's dismissal of Mr. Schell's § 1983 complaint, **deny** Mr. Schell IFP status, and **deny** his motion in limine.

Entered for the Court


JEROME A. HOLMES
Circuit Judge